Portsmouth District Court
No. 2011-291

THE STATE OF NEW HAMPSHIRE

v.

JOSIAH DAVIES

Argued: May 3, 2012
Opinion Issued: August 17, 2012

*Michael A. Delaney*, attorney general (*Elizabeth C. Woodcock*, assistant attorney general, on the brief and orally), for the State.

*David M. Rothstein*, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. The defendant, Josiah Davies, appeals an order of the Portsmouth District Court (*Gardner*, J.) partially denying his motion to withdraw his guilty plea and vacate his conviction. We affirm.

The defendant was charged with two counts of false imprisonment and one count of simple assault following a single incident of alleged domestic violence. On June 1, 2009, he appeared *pro se* for arraignment on the three class A misdemeanor charges. Prior to his arraignment, he spoke with the prosecutor regarding a potential plea agreement. During this discussion, the defendant indicated his intention to plead guilty, and then signed the acknowledgement and waiver of rights form that the prosecutor provided him. At this time, he was nineteen years old and had a GED and some technical college experience. The scheduled arraignment then went forward as a plea hearing.

The defendant's hearing followed other plea hearings and commenced with the trial court reading the complaints to him. The court then asked, "Sir, do you understand the nature of all three complaints?" to which the

defendant responded, "Yes." Next, the court advised the defendant of his "absolute right to be represented by counsel," but the defendant indicated his intent to proceed *pro se*. Then, referencing its earlier colloquies with other defendants, the court asked, "Would you like me to review [your constitutional rights] again with you, or are you satisfied that you understand them?" The defendant replied, "I understand them."

Next, the court reviewed the acknowledgement and waiver of rights form with the defendant. The defendant authenticated his signature on the form, and indicated that he did not have any questions. After confirming that the defendant was not under the influence of any substances or medication that might impair his judgment, the court asked, "Sir, what is your plea?" to which he responded, "Guilty, I guess."

Following the defendant's plea, the prosecutor made an offer of proof. The court did not question the defendant regarding the State's offer, nor did the defendant comment on the offer. After hearing the State's sentencing recommendation and questioning the defendant regarding his personal circumstances, the trial court asked, "And you're satisfied with what you have worked out?" The defendant replied, "Yup." The court imposed the negotiated suspended sentence, which among other things, required the defendant to complete a batterer's evaluation within sixty days. The court again asked the defendant if he had any questions, and the defendant replied, "Nope."

The defendant failed to complete the batterer's evaluation within sixty days. Consequently, in September 2009, the State filed a motion to impose his suspended sentence. Thereafter, in February 2010, the State and the defendant's court-appointed counsel entered into an agreement to stay the State's motion, conditioned on his completion of the batterer's evaluation and compliance with its recommendations.

In November 2010, after repeatedly failing to comply with the recommendation that he participate in classes and counseling, the defendant moved to vacate his guilty pleas. He argued that the false imprisonment charges were defective because they did not allege that he confined the victims unlawfully. Additionally, he challenged the sufficiency of the court's plea colloquy, *see Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969), arguing that the trial court failed to specifically review the elements of the simple assault charge. After a hearing, the trial court vacated his guilty pleas on the two false imprisonment charges, but found that he knowingly, voluntarily, and intelligently entered a guilty plea to the simple assault charge.

On appeal, the defendant argues that he did not enter a valid guilty plea because he was not advised of the essential elements of the simple assault charge. He contends, therefore, that his plea was not knowing,

voluntary, and intelligent as required by Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment to the United States Constitution. *See State v. Thornton*, 140 N.H. 532, 536 (1995). We first address the defendant's claim under the State Constitution, and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). Allowing withdrawal of a plea rests within the sound discretion of the trial court, and we will not set aside its findings absent an unsustainable exercise of discretion. *Thornton*, 140 N.H at 537.

■ It is well established that to be valid, a guilty plea must be knowing, intelligent, and voluntary. *E.g., State v. Dansereau*, 157 N.H. 596, 603 (2008); *see Boykin*, 395 U.S. at 243. "A guilty plea does not qualify as intelligent unless the defendant first receives real notice of the true nature of the charge against him." *State v. Arsenault*, 153 N.H. 413, 416 (2006) (quotation omitted); *see Henderson v. Morgan*, 426 U.S. 637, 645 (1976) (noting plea is not voluntary unless defendant receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process" (quotation omitted)). Therefore, prior to pleading guilty, the defendant must be informed of every essential element of the alleged offense and the court must determine that the defendant understands the charge. *State v. Kinne*, 161 N.H. 41, 47 (2010).

■ To mount a successful collateral challenge to a guilty plea, the defendant bears the initial burden and must describe the specific manner in which his waiver of rights was in fact involuntary or without understanding, and must at least go forward with evidence sufficient to indicate that his specific claim presents a genuine issue for adjudication. *State v. Offen*, 156 N.H. 435, 438 (2007). If the defendant meets his initial burden, and if the record indicates that the trial court affirmatively inquired into the knowledge and volition of the defendant's plea, then the burden remains with the defendant to demonstrate by clear and convincing evidence that the trial court was wrong and that his plea was either involuntary or unknowing for the reason he specifically claims. *Id.* On the other hand, if there is no record or an inadequate record of the trial court's inquiries into the defendant's volition and knowledge, the burden rests on the State to respond to the defendant's claim by demonstrating to a clear and convincing degree that the plea was voluntary or knowing in the respect specifically challenged. *Arsenault*, 153 N.H. at 416.

Because the defendant seeks to collaterally attack his plea, he bears the initial burden. He argues that although the court read the simple assault complaint at the beginning of the hearing, "it did not explain to [him] what the complaint required the State to do in order to secure a simple assault conviction." In particular, he contends that he "did not understand what

'unprivileged' [physical contact] meant, and no one explained to him that it was an independent element of the offense that the State had to prove in order to secure a conviction." The defendant also points out that in his motion to vacate, he stated that at the time he entered his plea, he was nineteen years old and had limited exposure to the criminal justice system. Thus, the defendant carried his initial burden of describing the specific manner in which his plea was allegedly unknowing.

Next, we look to whether the record complies with *Boykin*. *See Offen*, 156 N.H. at 438. Relying on *Arsenault*, the defendant contends that the record is insufficient because the trial court failed to ensure that he adequately understood the nature and elements of the charge. He maintains that reading the complaint to a *pro se* defendant does not, by itself, satisfy the due process requirements of a valid plea.

In *Arsenault*, the defendant sought to vacate an uncounseled guilty plea that resulted in a conviction for driving while intoxicated. *Arsenault*, 153 N.H. at 414-15. He argued that his guilty plea was not knowing, intelligent, and voluntary because the elements of the offense were never explained to him. *Id.* at 415. Additionally, he alleged that at the time of the plea, he was twenty years old, had minimum schooling, and had not consulted with counsel prior to appearing in court. *Id.* at 417. The trial court denied his motion. *Id.* at 415.

In reversing the trial court's decision, we concluded that the defendant met his initial burden of describing the specific manner in which his waiver was involuntary or without understanding. *Id.* at 417. Then, acknowledging the State's concession that the trial court did not advise the defendant of the essential elements of the offense, we noted that the record contained no indication that the trial court "affirmatively inquired into the knowledge and volition of the defendant's plea." *Id.* Thus, we concluded, the burden shifted to the State to demonstrate, to a clear and convincing degree, that the plea was knowing, intelligent, and voluntary in the respect challenged. *Id.* at 417-18.

The State advanced three arguments to support its contention that the defendant's plea was valid. *Id.* at 418-19. We rejected the State's first argument — that the court may assume that the defendant understands each element of the crime, *see Thornton*, 140 N.H. at 537 — noting this assumption is sometimes warranted, but only when the defendant is represented by counsel. *See Arsenault*, 153 N.H. at 418. We also rejected the State's second argument — that the defendant's receipt of the complaint prior to the plea colloquy was sufficiently adequate, in and of itself, to inform him of the elements and nature of the charged offense. *Id.* Finally, we rejected the contention that the defendant's signing of the acknowledgement and waiver of rights form was a sufficient indicator of his

comprehension of the elements of the offense. *Id.* at 419. We concluded, therefore, that the State failed to demonstrate by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary. *Id.*

Although the defendant likens the plea colloquy at issue to that in *Arsenault*, the two are distinguishable. Unlike in *Arsenault*, in which the record contained no discussion about either the elements or the nature of the offense charged, *see id.* at 417, here, the record is not similarly deficient. After reading the three charges to the defendant, the trial court then asked, "Sir, do you understand the nature of all three complaints?" The defendant responded, "Yes." In addition, the State specifically described the basis for the simple assault charge in its offer of proof, stating that when the alleged victim attempted to leave, the defendant grabbed her arm to prevent her departure. We note that the trial court asked for the defendant's plea before hearing the State's offer of proof and that the defendant was not given the opportunity to respond to the offer. This practice should not be followed. Nonetheless, in this case, we cannot conclude that the colloquy was fatally flawed as a result. Here, the trial court did not assume that the defendant understood the charges, *see id.*; rather, the defendant affirmatively indicated his understanding.

The defendant also signed an acknowledgement and waiver of rights form, wherein he acknowledged that "all elements of the charge(s) . . . have been explained to me." In addition, he initialed the section on the form describing the constitutional rights forfeited by a guilty plea. When given the opportunity to seek clarification, the defendant indicated that he had no further questions. Then, at the hearing on his motion, he admitted, "I guess I thought I did [understand the form] at the time."

In addition to giving the defendant "real notice of the true nature of the charge against him," *Henderson*, 426 U.S. at 645 (quotation omitted); *Arsenault*, 153 N.H. at 416, the trial court affirmatively inquired into his knowledge and volition. The court reiterated the defendant's right to be represented by counsel, it offered him several opportunities to ask questions and obtain clarification, and it questioned him regarding his age and educational level. Further, the court asked the defendant whether he needed further explanation of his constitutional rights, whether he understood the maximum penalties for each offense, whether he had taken any substances that might impair his judgment, and whether he was satisfied with what he "worked out" with the State.

Because the record indicates that the trial court affirmatively inquired into the defendant's knowledge and the volition of his plea, the burden remains with the defendant to demonstrate by clear and convincing

evidence that the trial court was wrong and that his plea was either involuntary or unknowing for the reason he specifically claims. *Kinne,* 161 N.H. at 47. While the defendant notes his age and "limited prior history and experience with the criminal justice system," these factors are insufficient to compel a finding that his plea was unknowingly entered. Thus, based on the record before us, we cannot conclude that the trial court unsustainably exercised its discretion in denying the defendant's motion.

Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, *see Henderson,* 426 U.S. at 644-47, we reach the same result under the Federal Constitution as we do under the State Constitution. *See Thornton,* 140 N.H. at 536.

*Affirmed.*

DALIANIS, C.J., and HICKS and LYNN, JJ., concurred.